IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Alberto Angel Gonzalez-Lozano, | No. CV 13-1006-PHX-ROS (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Steve Merlak, | |
| Respondent. | |

TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

On May 15, 2013, Petitioner Alberto Angel Gonzalez-Lozano, an inmate currently incarcerated at the Federal Correctional Institution ("FCI"), Phoenix, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. §2241, challenging the Bureau of Prisons' finding of guilt on the charge of the prohibited act of Stalking, and requesting a restoration of 40-days loss of good time, and an expungement of the incident from his records. (Doc. 1.) On November 27, 2013, Respondent [1] filed his Answer urging the Court to deny Petitioner's habeas petition on the merits. (Doc. 12-1, at 3.) On February 12, 2014, Petitioner filed a Reply, and on February 25, 2014, Petitioner filed a Motion to Amend Response (unopposed) clarifying facts asserted in his Reply. (Docs. 16, 17.) Petitioner's motion was granted by this Court. (Doc. 19.)

---

[1] Respondent asserts that he is not the proper respondent in this action, as he is not the warden of the institution in which Petitioner is incarcerated, as required by 28 U.S.C. §2242. (Doc. 12, n 1.) Warden Conrad Graber is the warden of FCI-Phoenix, and therefore should be substituted as respondent. (Id.) Petitioner does not dispute this assertion in his Reply. The Court will therefore by separate order, order that Warden Conrad Graber be substituted in for Steve Merlak as respondent in this action.

## BACKGROUND

Petitioner is currently an inmate housed at FCI, Phoenix, Arizona, and is serving a 57-month sentence for the crime of Deported Alien Found in the United States, in violation of 8 U.S.C. §1326, with a projected release date of January 6, 2015. (Doc. 8, at ¶¶3, 4.) On August 27, 2012, FCI-Staff psychologist, Dr. Marilyn Park, observed Petitioner putting his pants on in front of the prison's outdoor recreation area. (Doc. 12-2, at 3.) Dr. Park advised Petitioner that he needed to dress in his housing unit. (Id.) On August 31, 2012, FCI-Phoenix landscape foreman D. Flores saw Petitioner, wearing only a shirt and his underwear, in the hallway that leads to Dr. Park's office. (Id.) Mr. Flores ordered Petitioner to put his pants back on, and issued an incident report to Petitioner for Stalking and Indecent Exposure. (Id.)

Petitioner was provided a copy of the incident report and notified of his rights later the same day. (Doc. 21-2, at 3.) An investigation was conducted, during which Petitioner stated that he did not think anyone would see him without his pants on and that he was not stalking anyone. (Id.) A hearing on the incident report took place before the Unit Discipline Committee (UDC), at which time Petitioner admitted that staff had caught him putting his pants on. (Id.) The UDC found that there was enough evidence to further the charge and referred the matter to a Discipline Hearing Officer (DHO) for further hearing. (Id.)

On September 25, 2012, a hearing before the DHO took place. (Doc. 12-2, at 3.) Petitioner had a staff representative that he requested present with him. (Id., at 9.) During the hearing, the DHO read aloud to Petitioner a memorandum written by Dr. Park on August 31, 2012 describing the incident. (Doc. 12-2, at 3, 8.) Petitioner was then afforded an opportunity to make any statements regarding the memorandum. (Id., at 3.) Petitioner admitted that on August 27, 2012, Dr. Park told him that his undressed state around the education and outside recreation area made her feel "uncomfortable." (Id.) With regard to the second incident, Petitioner claimed that he was simply changing clothes in the hallway because the restroom was occupied. (Id., at 3-4.) Petitioner had another inmate witness present at the hearing to corroborate his assertions; however, the witness did not know firsthand whether the restroom was occupied, but that it was "always busy." (Id., at 4.) Due

to the witness's lack of firsthand knowledge, the DHO found the witness's testimony to be unreliable. (Id.)

After considering the statements by Petitioner, the inmate-witness and staff, and considering the documentary evidence (to include the memorandum of Dr. Park), the DHO upheld the charge of Stalking, specifically finding that Petitioner had been previously warned that he should not be in a state of undress by Dr. Park's office as it made her uncomfortable. (Doc. 12-2, at 3.) The DHO also found that Dr. Park had told Petitioner that he should get dressed in his housing unit, and that despite this admonishment, just four days later Petitioner "stripped down to [his] underwear" in the "hallway Dr. Park must use to access or leave her office." (Id.) The DHO noted that the hallway where Petitioner was located, according to the inmate representative chosen by Petitioner to assist him in the hearing, was located no more than 25 yards from Dr. Park's office. (Id.)

As a sanction for the Stalking violation, the DHO imposed on Petitioner the loss of 27-days Good Conduct Time, a 60-days administrative segregation and a 3-months loss of phone privileges. (Doc. 12-2, at 4.) Petitioner submitted a regional administrative remedy appeal to the Western Regional Office, and the Regional Director upheld the findings of the DHO. (Doc. 12-1, at 4.) Petitioner appealed to the General Counsel, who likewise upheld the DHO's findings. (Id.) Petitioner then timely filed his habeas petition,[2] raising a challenge to the disciplinary sanction on two grounds:

(1) there was insufficient evidence to find him in violation of the prohibited act.
(2) his due process rights were violated during the disciplinary process as he was not allowed to challenge Dr. Park's memorandum.

(Doc. 1, at 4, 5.)

**ARGUMENT**

Federal prisoners have a statutory right to good time credits. See 18 U.S.C. §2634. The Due Process Clause of the Fourteenth Amendment extends to discipline hearings at which an inmate may lose good conduct sentence credits to which he is otherwise entitled. Wolff v. McConnell, 418 U.S. 539, 557 (1974). Although the Supreme Court held that the

---

[2] Respondent does not contest that Petitioner exhausted his administrative remedies before filing his habeas petition. (Doc. 12, at 4.)

- 3 -

1 full panoply of Due Process rights do not apply in the prison discipline context, an inmate
2 subject to disciplinary sanctions that can impact a protected liberty interest must be afforded:
3 1) 24-hour advanced notice of the charge(s) against him; 2) a written statement by the fact
4 finder as to the evidence relied on and the reasons for the action; 3) an opportunity to call
5 witnesses and present documentary evidence; 4) assistance at the hearing if he is illiterate or
6 if the matter is complex; and, 5) an impartial fact finder. Wolff, 418 U.S. at 563-72.

7   The Due Process Clause requirements are satisfied if "some evidence" supports the
8 decision of the disciplinary tribunal. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472
9 U.S. 445, 456-57 (1985). Under that standard, "the relevant question is whether there is any
10 evidence in the record that could support the conclusion reached by the disciplinary board."
11 Id., at 455. The standard is "minimally stringent." Cato v. Rushen, 824 F.2d 703, 705 (9th
12 Cir. 1987). It only requires "*any* evidence in the record that could support the conclusion
13 reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-456, emphasis added
14 in Cato). The "some evidence standard" does not require a court to examine the entire
15 disciplinary record, perform an independent assessment of credibility of witnesses or re-
16 weigh the evidence. Hill, 472 U.S. at 455. In reviewing disciplinary records, courts must
17 defer to prison officials' expert judgments in matters of prison administration and inmate
18 disciple. See, Norwood v. Vance, 591 F.3d 1062, 1066 (9th Cir. 2010).

19   The inmate discipline program provides for various levels of prohibited acts based on
20 severity: Greatest, High, Moderate, and Low. 28 C.F.R. §541.3(a). The prohibited acts are
21 listed and defined in 28 C.F.R. §541.3, as well as their commensurate sanctions. See 28
22 C.F.R. §541.3(b) and Tables 1-2 thereto. The prohibited act at issue in this case is Code 225,
23 Stalking, which is considered a high severity level prohibited act and is defined as "[s]talking
24 another person through repeated behavior which harasses, alarms, or annoys the person, after
25 having been previously warned to stop such conduct." Id., Table 1.

26   The evidence on the record before the DHO was sufficient to support the finding of
27 a stalking violation. The memorandum of Dr. Park indicated that she observed Petitioner in
28 a state of undress and cautioned Petitioner to dress himself in his housing unit. Petitioner
admitted during the hearing that he was told by Dr. Park that his conduct was inappropriate

1 and made her uncomfortable.  Four days later, Petitioner was observed by a staff member to
2 be in his underwear in a hallway used by Dr. Park to access her office.  Petitioner admitted
3 that he was putting his pants on at the time that he was observed by staff, but that he was just
4 changing clothes because the restroom was occupied.  The evidence supported a finding that
5 Petitioner had stalked Dr. Park by his repeated behavior of twice being in a state of undress,
6 once in her presence and a second time, just 4-days later, in a hallway she would pass on her
7 way to her office, that such behavior harassed, alarmed, or annoyed Dr. Park, and that
8 Petitioner had been previously warned to stop such conduct.

9        In his Reply, Petitioner attaches a map he has drawn to demonstrate that the hallway
10 he was found in on August 31, 2012, was not the adjoining hallway to Dr. Park's office, but
11 is separated by "two different doors and at least one corridor," and also asserts that Dr. Park
12 may have had a motive to fabricate the charge due to Petitioner's earlier reporting of her
13 "provid[ing] a DVD from her personal collection for the use of inmates."  (Doc. 16, at 3.)
14 Petitioner did not raise these issues before the DHO.  Even if he had, Petitioner's map does
15 not contradict the finding of the DHO that Petitioner was in a hallway through which Dr.
16 Park passed on her way to and from her office, and Petitioner's assertion of Dr. Park's
17 motive to fabricate is not supported by any evidence.

18        In Petitioner's second ground for habeas relief, Petitioner asserts he was denied due
19 process because the DHO "never permitted [him] to examine or challenge" the memorandum
20 of Dr. Park.  (Doc. 1, at 5.)  In fact, the memorandum was read to him and he was afforded
21 the chance to make a statement in response.  Petitioner was given the due process procedural
22 rights an inmate subject to disciplinary sanction must be afforded, as set forth in Wolff,
23 supra.  In addition, Petitioner did not deny Dr. Park's assertion in the memorandum that she
24 observed Petitioner putting his pants on, or that she cautioned him to dress in his housing
25 unit, but claimed that he was not stalking her and was merely changing clothes.  Thus, any
26 consideration by the DHO of Dr. Park's memorandum was not prejudicial to Petitioner.
27 \\\
28 \\\

**CONCLUSION**

This Court finds that sufficient evidence supported the DHO's finding that Petitioner had engaged in the prohibited act of Stalking, and that Petitioner's due process rights were not abridged by the DHO's consideration of a memorandum by Dr. Park, and even if there was error in consideration of the memorandum, Petitioner suffered no prejudice. The Court will recommend that Petitioner's habeas petition be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 24th day of July, 2014.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge